# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SWINTON,<br><br>Plaintiff,<br><br>vs.<br><br>MARK ESPER,<br>Secretary, Department of Defense,<br><br>Defendant. | CASE NO. 18-cv-00381-LAB (MDD)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 29]** |

Richard Swinton brought this suit for employment discrimination and retaliation against his former employer, the Defense Contract Management Agency (DCMA), part of the United States Department of Defense. The United States has moved for summary judgment and, for the reasons below, the motion is **GRANTED**.

## Background

Swinton worked for the DCMA as a Contract Price/Cost Analyst for over a decade until he was fired on August 21, 2015. Dkt. No. 3 at ¶¶ 20-21; Dkt. No. 29-3 at 33; Dkt. No. 33 at No. 1. Among other responsibilities, his written job description tasked him with "cost monitoring." Dkt. No. 29-2 at 13-15; Dkt. No. 33 at No. 2. Swinton, who is 69 years old, worked directly under two supervisors, both of whom were over age 50 when he was dismissed. Dkt. No. 29-4 at 3, 17, 25. Three other employees—Lorraine Kimball (YOB:

1946), Richard Marini (YOB: 1974), and Jose Gutierrez (YOB: 1981)—shared the same title, grade, and responsibilities as Swinton. Dkt. No. 3 at ¶ 26.

By all accounts, Swinton enjoyed a successful career with the DCMA until July 2013, when the agency first notified him that his work was unsatisfactory. Dkt. No. 29-3 at 2-3; Dkt. No. 33 at Nos. 4-5. The DCMA provided instruction for improvement and offered Swinton confidential professional counseling to help with any health or personal problem that might be contributing to his declining performance. Dkt. No. 29-3 at 2-3. At the end of 2013, Swinton received an Annual Performance Rating, in which his supervisor rated him "fully successful"[1] for 2013, but also noted Swinton "barely met his assigned . . . goals." *Id.* at 5-7; Dkt. No. 33 at No. 6.

In January 2014, Swinton's supervisor assigned him to work on a cost-monitoring account. Dkt. No. 3 at ¶ 28; Dkt. No. 29-2 at 5. These cost-monitoring duties, according to Swinton, amounted to a second full-time job on top of his full-time Contract Price/Cost Analyst position. Dkt. No. 3 at ¶¶ 29-30, 33. Only he and his oldest colleague, Lorraine Kimball, were assigned these duties. *Id.* at ¶ 34. Swinton admits he "was unable to keep up and [had] difficulty managing his workload," but maintains his inability to complete his assignments was because he was assigned a second full-time job. *Id.* at ¶¶ 32, 61. He attempted to address his workload concerns with his supervisors, but they insisted he had not been given two full-time jobs. *Id.* at ¶ 33; Dkt. No. 29-2 at 5.

Swinton's performance worsened during 2014. In July 2014, his supervisor provided him with a performance-counseling letter that stated he was "not performing satisfactorily." Dkt. No. 29-3 at 11-14; Dkt. No. 33 at Nos. 7-9. The letter warned that if his performance didn't improve, he would be placed on a Performance Improvement Plan (PIP). Dkt. No. 29-3 at 13; Dkt. No. 33 at No. 9. The DCMA again offered Swinton professional counseling. Dkt. No. 29-3 at 13-14. Although Swinton challenged the letter's

---

[1] Swinton could have received one of three possible performance ratings: "Level 5: Outstanding," "Level 3: Fully Successful," or "Level 1: Unacceptable." Dkt. No. 29-3 at 6.

findings, according to the DCMA, his performance did not improve. *Id.* at 11-13, 15-17. In a mid-year performance review the following month, Swinton's supervisor noted that he was "failing to meet his assigned . . . goals" during the first half of 2014, and the supervisor advised Swinton needed to "significantly improve his performance." *Id.* at 8-10. On November 13, 2014, the DCMA served him with a Notice of Proposed Reprimand stating that the supervisor intended to formally reprimand him for his work failures. *Id.* at 15-17; Dkt. No. 33 at No. 10. He was again offered professional counseling, but responded that the proposed action was "motivated by retaliation for [his] filing [of] a [union] grievance against [his] supervisor."[2] Dkt. No. 29-3 at 16-17.

Because of work-related stress, Swinton began seeing a psychiatrist, Dr. Mark Melden, in October 2014. Dkt. No. 3 at ¶ 40. Dr. Melden diagnosed him with depression and anxiety. *Id.* Around November 13, 2014, Swinton provided his supervisors with a letter from Dr. Melden. Dkt. No. 33 at No. 11. The letter discussed Swinton's mental health and recommended that he "be limited in the duties performed as originally assigned until the flare ups subside." *Id.* at Nos. 11-12; Dkt. No. 29-4 at 10. In his complaint, Swinton construes the letter as a request for reasonable accommodation. Dkt. No. 3 at ¶ 41. The DCMA responded to Dr. Melden's letter with a written request seeking documentation about how Swinton's medical condition affected his ability to perform his duties. Dkt. No. 29-3 at 18-20; Dkt. No. 33 at No. 13. Swinton provided the DCMA with another letter from Dr. Melden, dated December 16, 2014, stating that Swinton was "being seen monthly and taking medication regularly," but that he could "return to work without restriction." Dkt. No. 29-4 at 11. The DCMA offered Swinton the opportunity to consult Occupational Health Medical Consultant, Dr. Neal Presant, which he accepted. Dkt. No. 33 at No. 14. After speaking with Dr. Melden and reviewing Swinton's medical records, Dr. Presant concluded that "[i]n terms of accommodation, Swinton does not appear to be disabled at present[.]" *Id.* at No. 15; Dkt. No. 29-4 at 12. Dr. Presant recommended that

---

[2] Swinton admits he never filed a grievance. Dkt. No. 29-4 at 5.

Swinton be given work management counseling and advised the DCMA "not to give him more work than is generally required of his position." Dkt. No. 29-4 at 12; Dkt. No. 33 at No. 15.

According to the DCMA, Swinton's poor performance continued, and on December 18, 2014, his supervisors placed him on a 90-day PIP. Dkt. No. 33 at Nos. 4-10, 17-18; Dkt. No. 29-3 at 25. During the PIP, Swinton performed no cost-monitoring duties and had a workload comparable to his colleagues. Dkt. No. 29-3 at 36-37. Swinton's supervisor met with him weekly to go over his progress and provide feedback. *Id.* at 36; Dkt. No. 33 at No. 20. The PIP was extended once, but concluded around April 10, 2015. Dkt. No. 33 at No. 21. On May 27, 2015, he filed an unsuccessful Equal Employment Opportunity Complaint against his supervisors. *Id.* at No. 23; Dkt. No. 29-2 at 8. Around June 25, 2015, Swinton's supervisors notified him that they intended to fire him based on his deficient performance and his failure to satisfy the PIP. Dkt. No. 29-3 at 31-32; Dkt. No. 33 at No. 24. The next day, his remaining workload was redistributed, and he was assigned administrative tasks. Dkt. No. 29-4 at 20, 30. Swinton was fired on August 21, 2015. Dkt. No. 29-3 at 33-40; Dkt. No. 33 at No. 25.

Swinton alleges: (1) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq.; (2) disability discrimination under the Rehabilitation Act, 29 U.S.C. §§ 701, et seq.; and (3) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. Dkt. No. 3 at ¶ 3.

**Preliminary Matters**

Swinton's opposition to the United States' summary judgment motion is accompanied by four exhibits, but he did not file a declaration authenticating the exhibits and, in any event, only cites to them infrequently in his opposition. Dkt. No. 32. Instead, his motion relies almost entirely on unverified allegations in his amended complaint. Dkt. Nos. 3, 32. An unverified complaint cannot be used as evidence to demonstrate genuine issues of fact on summary judgment, nor is the Court required to scour the record to find support for Swinton's arguments. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006);

Fed. R. Civ. P. 56(c)(3) (district court need consider only the cited materials); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-30 (9th Cir. 2001) (district court need not "'comb the record to find some reason to deny a motion for summary judgment'" and "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein") (quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).

The United States represents in its reply that one of the exhibits Swinton attaches to his opposition was not produced in discovery,[3] but it did not lodge a formal objection to this or any of Swinton's other evidence. Dkt. No. 34 at 2, fn. 5. The Court has considered the exhibits attached to Swinton's opposition despite his failure to comply with the applicable procedural rules. *Hoye v. City of Oakland*, 653 F.3d 835, 841 fn.3 (9th Cir. 2011) ("'defects in evidence submitted in opposition to a motion for summary judgment are waived absent'" an objection) (quoting *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 485-86 (9th Cir. 1991)); Fed. R. Civ. P. 56(c)(3) (district court may consider materials in the record on summary judgment).

**Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). It is the moving party's burden to show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to produce evidence supporting its claims. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). This can be done by presenting evidence that would be admissible at trial (*see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)), or by pointing to facts

---

[3] This document sets forth instructions for the DCMA's cost monitoring program. Dkt. No. 32-3, "Exhibit C."

or evidence that could be presented in admissible form at trial *(see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)).

"On a motion for summary judgment in discrimination cases, the . . . order of proof and shifting of burdens must be viewed in light of the traditional test for granting summary judgment." *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985) (overruled on other grounds). While the Court views the evidence in the light most favorable to Swinton, in order to avoid summary judgment, he must produce "*affirmative evidence from which a jury could find in his favor.*" *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "Bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Id.*

## Discussion

### I. Age Discrimination Claim

Swinton alleges that he was subjected to multiple adverse employment actions because of his age in violation of the ADEA. *See* Dkt. No. 3 at ¶¶ 54-66. He maintains that the first adverse employment action was when he was assigned an additional, full-time position; the second adverse employment action was when he was fired. *Id.*; Dkt. No. 32 at 16-17. Swinton offers two discrimination theories—disparate treatment and disparate impact. Dkt. No. 3 at ¶¶ 57, 60-61. The United States argues that both theories fail as a matter of law. Dkt. No. 29-1 at 14-20. The Court agrees with the United States on both fronts.

#### a. Disparate Treatment

To establish a prima facie claim of disparate treatment under the ADEA, a plaintiff bears the initial burden of demonstrating he: (1) belongs to a protected class, (2) performed his job in a satisfactory manner, (3) suffered an adverse employment action, and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *see also Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986) ("When a motion for summary judgment is involved, a prima

facie case refers to the plaintiff's burden of 'producing enough evidence to permit the trier of fact to infer the fact at issue.'") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to show a legitimate non-discriminatory reason for the adverse employment action. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). If the employer provides such a reason, the burden shifts back to the plaintiff to show the employer's reason is a pretext for age discrimination. *Id.* The plaintiff must show the reason offered is pretextual through direct evidence or by showing that the reason is not credible. *Id.* at 1212.

Even viewed in the light most favorable to him, the record does not support Swinton's argument that his unsatisfactory performance is excused because he was assigned cost-monitoring duties.[4] Swinton was fired after receiving multiple corrective notices and warnings. *See* Dkt. No. 29-3 at 2-17, 21-32. He admits his work performance was unsatisfactory before he was fired, but he blames his performance on being given cost-monitoring duties on top of his other assigned Contract Price/Cost Analyst duties. Dkt. No. 3 at ¶¶ 29-30, 32, 61; Dkt. No. 33 at No. 19. In his view, this increased workload amounted to an adverse employment action. Dkt. No. 32 at 16. "Cost monitoring," however, is a duty specifically included in Swinton's job description, and comprised approximately 20% of the position's duties. Dkt. No. 29-2 at 13-15; Dkt. No. 33 at No. 2. As such, the assignment of additional cost-monitoring work did not "materially affect" the terms of his employment and therefore did not constitute an adverse employment action under the ADEA.[5] *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("[A]n adverse employment action is one that 'materially affect[s] the compensation,

---

[4] Swinton cites to "Exhibit C" of his opposition to support his claim that cost-monitoring duties amount to a separate full-time job (Dkt. No. 32 at 6:5-10, 24:20-22), but he doesn't identify the specific portion of that twenty-five-page document that supports his claim. The Court has examined the exhibit and finds nothing to support Swinton's claim.

[5] During his PIP, Swinton did not perform cost-monitoring duties and had a workload on par with his colleagues. Dkt. No. 29-3 at 36-37.

terms, conditions, or privileges of . . . employment.'") (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)). Contrary to Swinton's argument, he has not shown that he performed in a satisfactory manner before he was fired.

Further, Swinton offers no proof that he was replaced by a substantially younger employee with equal or inferior qualifications. In his opposition, he argues that "[a] few weeks prior to his removal, [his] duties were reassigned to Ms. Jessica McLaughlin[, who] was under the age of forty." Dkt. No. 32 at 17. He admits, however, that he doesn't know Ms. McLaughlin's exact age, and he cites no evidence about Ms. McLaughlin's qualifications. *Id.* In short, Swinton's disparate treatment claim fails because he hasn't shown that he performed his job in a satisfactory manner, nor that he was replaced by someone younger and with inferior qualifications.

Even if Swinton could make a prima facie showing of discrimination, because the United States has provided legitimate, nondiscriminatory reasons for the DCMA's actions—such as the fact that Swinton's new cost monitoring duties were part of his job description (Dkt. No. 29-1 at 6, 11:17-20, 19-20; Dkt. No. 29-2 at 7, 13-15; Dkt. No. 33 at No. 2), and that he was fired for his poor performance (Dkt. No. 29-1 at 7-9, 10-12; Dkt. No. 29-4 at 19-22, 26-28; Dkt. No. 33 at Nos. 4, 6-10, 16-18, 20-22)—the burden shifts to Swinton to show that those reasons were simply a pretext for discrimination. At the pretext stage, Swinton must produce evidence, circumstantial or direct, of his employer's discriminatory motive. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998) ("We have held, clearly, that a plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing."). He has not made this showing. Indeed, Swinton provides *no* evidence of discriminatory motive. Dkt. No. 32 at 18-19, Sec. III.A.2., *Pretext*. Because he has not established pretext, his disparate treatment claim fails on this ground as well.

//

//

### b. Disparate Impact

Swinton's other discrimination theory—that the DCMA's actions, even if unintentional, had an impermissible disparate impact on older employees—also fails. He argues, for example, that if the DCMA's reason for assigning him cost-monitoring duties was not age discrimination then the facially neutral policy of assigning cost-monitoring projects to the oldest employees, allegedly based on experience and longevity, had a disparate impact on those (two) employees. Dkt. No. 32 at 20-21; Dkt. No. 3 at ¶ 60.

A plaintiff attempting to show a disparate impact must: (1) identify a facially neutral employment practice, (2) demonstrate a disparate impact upon the group to which they belong, and (3) prove causation. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 993-95 (1988); *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014). As the Supreme Court has cautioned, "[i]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis in original) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)).

Swinton's bare-bones allegations here do not clear the high bar required to prove a disparate impact claim. He has done little more than point out two instances where he and another age-protected employee were assigned to cost-monitoring projects that their other colleagues were not. This falls far short of establishing that the DCMA implemented an "employment practice" that negatively impacted age-protected employees. *See Stockwell*, 749 F.3d at 1114-15 (explaining that the requirement to identify an employment practice is "not a trivial burden" and "has bite") (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100-01 (2008)).

Swinton's disparate impact claim also fails because he fails to show any observed statistical disparities between the protected group and similar employees outside the protected group. *See Watson*, 487 U.S. at 994-95 ("statistical disparities must be

sufficiently substantial that they raise such an inference of causation"); *Stockwell*, 749 F.3d at 1115 (plaintiff "must demonstrate a statistical disparity affecting members of the protected group" and "[a]bsent such a group-based disparity, the claim fails"); *see also Moore v. Hughes Helicoptors, Inc.*, 708 F.2d 475, 481-86 (9th Cir. 1983). Swinton has not made (or attempted to make) this type of showing,[6] and has therefore failed to establish a disparate impact claim.

Because Swinton has failed to show either disparate treatment or a disparate impact, the motion for summary judgment on his age discrimination claim is **GRANTED**.

## II. Disability Discrimination Claim

Swinton next alleges that the DCMA violated the Rehabilitation Act by failing to reasonably accommodate his disability after he submitted a request for accommodation. *See* Dkt. No. 3 at ¶¶ 67-83. The United States argues that his disability discrimination claim must be dismissed because: (1) these protections are unavailable to federal employees under 29 U.S.C. § 794, and (2) even if they were available to him, he has failed to show the DCMA knew of a qualifying disability or failed to reasonably accommodate him. Dkt. No. 29-1 at 20-23. The Court agrees.

First, Swinton does not have a legally cognizable disability discrimination claim under § 794. Dkt. No. 3 at ¶¶ 5, 17. Section 794 provides a right of action to dismissed private—not federal—employees. *See Boyd v. United States Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985); *see also Johnston v. Horne*, 875 F.2d 1415, 1420-21 (9th Cir. 1989) (overruled on other grounds) ("Section 794 does not create a private cause of action for handicap discrimination against a *federal employer* by a *federal employee*.") (citing *Boyd*, 752 F.2d at 413) (emphasis in original). Because Swinton was a federal employee, his exclusive remedy for disability discrimination is under § 791, not § 794. *Id.* He does not

---

[6] Swinton provides only two cites to evidence supporting his disparate impact claim. *See* Dkt. No. 32 at 20-21.

have an actionable claim under § 794 and the government is therefore entitled to summary judgment.

In any event, Swinton's § 794 claim would fail on the merits even if he had standing to bring it. The Rehabilitation Act requires an employer to make reasonable accommodations for an employee's known, qualifying disabilities. *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 680 (9th Cir. 2001); 29 U.S.C. § 794(d) (ADA standards govern plaintiffs alleging discrimination under § 794 / § 504). Once an employee informs his employer of their disability and request for accommodation, the employer must determine "[t]he appropriate reasonable accommodation . . . through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. Part 1630, Appendix, Process of Determining the Appropriate Reasonable Accommodation. This process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. 'Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996) (affirming summary judgment in favor of employer where employee was found to be responsible for breakdown in interactive process)).

On the record before the Court, there is no genuine dispute of material fact about whether the DCMA knew of and failed to provide Swinton with a reasonable accommodation. After Swinton provided his supervisors with a letter from his psychiatrist, Dr. Melden (Dkt. No. 29-4 at 10; Dkt. No. 33 at Nos. 11-12),[7] the DCMA undertook a

---

[7] Although Swinton claims he alerted the DCMA of his condition at some point prior to the November 6, 2014 letter, he points to no evidence corroborating this. Dkt. No. 29-4 at 10; Dkt. No. 33 at Nos. 11-12; *see also* Dkt. No. 3 at ¶¶ 41, 69, 75; Dkt. No. 32 at 9-10, 22-23, 25.

good-faith, interactive process in order to determine whether he required an accommodation. This included timely responding to the letter with a written request seeking additional documentation about his alleged disability (Dkt. No. 29-3 at 18-20; Dkt. No. 33 at No. 13), as well as providing Swinton the opportunity to consult an Occupational Health Medical Consultant even after he notified the DCMA that his medical condition had resolved (Dkt. No. 29-4 at 11-12; Dkt. No. 33 at Nos. 14-15). Even viewed in the light most favorable to Swinton, these facts show that DCMA fully engaged in the interactive accommodation process and therefore cannot be held liable. *See Zivkovic*, 302 F.3d at 1089 (liability for failure to provide reasonable accommodations is triggered only where the employer is responsible for the breakdown in the interactive process). The motion for summary judgment as to Swinton's Rehabilitation Act claim is **GRANTED**.

**III. Retaliation Claim**

Finally, Swinton alleges that the DCMA violated Title VII of the Civil Rights Act of 1964 by terminating him in retaliation for filing a discrimination complaint with the EEOC and for submitting a request for a reasonable accommodation to the DCMA. *See* Dkt. No. 3 at ¶¶ 84-101. He also claims that he was subjected to harassment and other adverse actions leading up to his dismissal because of his EEOC complaint. *Id.* The United States argues that Swinton's retaliation claim must be dismissed because he does not allege that he was retaliated against for engaging in activity protected under Title VII. Dkt. No. 29-1 at 23-24. The Court again agrees.

Title VII retaliation occurs when an employer discriminates against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII enables "suit by any plaintiff with an interest 'arguably sought to be protected by the statute,' while excluding plaintiffs . . . whose interests are unrelated to the statutory prohibitions in Title VII." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (quoting *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522

U.S. 479, 495 (1998)). Title VII affords protections based on race, color, religion, sex, and national origin. *Id.* at 173-74.

Swinton's retaliation claim fails because he does not allege that he was retaliated against for engaging in activity protected by Title VII. He alleges that he was retaliated against for filing age-related EEOC claims and making disability-accommodation requests. Dkt. No. 3 at ¶¶ 85-88. But neither age nor disability are protected under Title VII. *See Thompson*, 562 U.S. at 173-74; *see also Learned v. City of Bellevue*, 860 F.2d 928, 932-33 (9th Cir. 1988) (holding that district court properly granted summary judgment on Title VII retaliation claim where plaintiff did not produce evidence of, or allege, a valid Title VII claim). He also offers no argument opposing summary judgment, which amounts to abandonment of his claim. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *see also* CivLR 7.1.f.3.c.; *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995). The motion for summary judgment as to Swinton's retaliation claim is **GRANTED**.

## Conclusion

The United States' Motion for Summary Judgment is **GRANTED**. The clerk is directed to enter judgment in favor of the United States and close the case.

**IT IS SO ORDERED**.

Dated: 1/15/2020

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge